

O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

File Number:

January 29, 2025

**David Marroso**
D: +1 310 246 8469
dmarroso@omm.com

**The Honorable James Donato**
450 Golden Gate Avenue
San Francisco, CA 94102

**Re: USA's Improper Privilege Notice,** *CPHP DEVELOPMENT, LP, et al., v. TETRA TECH EC, INC., et al.*, **Case No. 3:20-CV-01485-JD**

**Your Honor**,

Lennar, joined by Five Point & the Pennington Plaintiffs (collectively, "Side One"), writes in response to the letter brief filed on January 27, 2025 (Dkt. 291), in which the United States asks the Court to order the return or destruction of two highly relevant, non-privileged documents the United States produced to Side One on December 27, 2024. The two documents are 2017/2018 presentencing investigation reports (PSIRs) prepared by the Probation Department concerning Stephen Rolfe and Justin Hubbard, two former Tetra Tech supervisors who pled guilty before this Court to the felony of submitting false documents to the United States pursuant to 18 U.S. Code § 1519. The seven-year old documents are not privileged, and the confidentiality concerns addressed in Rule of Criminal Procedure 32-7 have no application in a separate civil case long after the defendants have served their sentences. *See U.S. Indus., Inc. v. U.S. Dist. Ct. for S. Dist. of Cal.*, Cent. Div., 345 F.2d 18, 23 (9th Cir. 1965). There is no basis to order the return and destruction of these two documents, and it would be manifestly unjust to prevent Side One from using them in their cases.

**Relevant Facts**. Justin Hubbard and Stephen Rolfe were Tetra Tech supervisors in the field at Hunters Point Shipyard. Both were charged with and, in 2017, pled guilty to falsifying documents submitted to the United States. In his plea agreement, Rolfe admitted he had been pressured by three of his superiors, including the Project Manager at Hunters Point Shipyard. Rolfe sought a reduced sentence in part because he promised to assist the government's investigation into systemic fraud perpetrated by Tetra Tech at The Shipyard. Ex. 2016, Rolfe Sentencing Tr. at 5–6. The Court ordered a reduced sentence for Rolfe. *Id*. For his part, Hubbard said he acted alone, an assertion over which this Court cast some doubt, saying it did not believe Hubbard "just decide[d] one day he's going to substitute clean dirt for dirty dirt on his own out of the blue." TT_03298804, Hubbard Sentencing Tr. at 8.

Hubbard and Rolfe served their prison sentences and were released in 2018. Naturally, Side One deposed both men as part of this case. The depositions occurred in November 2024. Each former Tetra Tech supervisor had their own attorney, who were paid for by Tetra Tech, and they both met with counsel for Tetra Tech to prepare for their depositions. Hubbard Dep. Tr. at 24–25; Rolfe. Dep. Tr. at 68–69 (lead counsel for Tetra Tech spent hours preparing Rolfe for his

deposition). At his deposition, Rolfe recanted his prior sworn statements that he had been pressured by Tetra Tech superiors, saying his representations to the Court in his plea agreement (and elsewhere) were either misreported or taken out of context. (Q. Why did you sign a document being submitted to a federal court that said you understood Mr. McWade's statements that way if you did not understand McWade's statements that way? A. Well I don't know why I signed this form. I told you before I wasn't in the right state of mind. Rolfe Dep. Tr. at 165:7-18.) (Q. Is the sentence that I just read true or false? Irrespective of whether you signed it. A. Both. Half of it's true. Q. Which half is true and which half is false? A. The first part he said. He said that, to get out of that area. Q. Which part is false? A. The part about it being a survey unit. Q. What about multiple occasions? A. I only heard it once. Q. Okay. So one part of it is true, two parts of it are false? A. Yep. *Id*. at 168-169).

On November 27, 2024, Side One filed a letter brief seeking an additional two hours to examine Mr. Rolfe based on Side One's contention that Mr. Rolfe's attorney and counsel for Tetra Tech obstructed questioning with over 1,400 objections and instructions not to answer questions, virtually all of which did not seek disclosure of privileged communications. (Dkt. 276).

On December 27, 2024, 30 days after Side One's letter brief regarding Rolfe and approximately six weeks after the Hubbard and Rolfe depositions, the United States made a targeted document production with documents related to Hubbard's and Rolfe's criminal proceedings, including the PSIRs. Without disclosing Mr. Rolfe's PSIR (which has been sequestered), Side One believes it contains information that contradicts sworn testimony he gave at deposition.

Along with the production, the United States submitted a privilege log that referenced 93 additional Rolfe and Hubbard-related documents that the United States deemed were "privileged" and "work product" and were being withheld. Under the circumstances, it was apparent to Side One that the United States intended to use these newly-produced documents in connection with Side One's letter brief or otherwise in the case.

On January 3, 2025, Side One filed a supplement to its letter brief, notifying the Court of the United States' production of the PSIRs and asking for leave to examine Rolfe about it.

Only then did the United States claim the PSIRs were "inadvertently produced" and seek to claw them back pursuant to the parties' stipulated clawback agreement.

**Analysis**. The United States relies on Crim. Proc. R. 32-7 as the basis for clawing back the PSIRs. Rule of Criminal Procedure 32-7 does not create a privilege, or a "governmental privilege." It is a confidentiality restriction on what the government may disclose and is intended for the benefit of defendants awaiting sentencing and the probation process in criminal proceedings. *See Julian v. U.S. Dep't of Just*., 806 F.2d 1411, 1414, 1420 (9th Cir. 1986), aff'd, 486 U.S. 1 (1988) (explaining that a "presentence investigation report is composed primarily of factual data about the prisoner" used by the court "while formulating a sentencing decision" and rejecting attempt to withhold "essentially factual, nonprivileged material"). This rule is not absolute and does not apply here because both defendants have already been sentenced and served their time, and many other presentencing materials have long since been produced and relied on in discovery. Additionally, the parties' clawback agreement permits clawbacks on the

basis of privilege only, not confidentiality.  Paragraph 3 of the Clawback Order states a clawback notice "must contain information sufficient to identify the Document, . . . identification of the privilege asserted, and the basis for the privilege assertion."  The United States has failed to assert an applicable privilege, and thus, its clawback notice in invalid.  Nevertheless, we have sequestered the PSIRs pending the Court's ruling.

Further, Crim. Proc. R. 32-7 does not apply in civil proceedings once the underlying criminal proceedings are over.  The Ninth Circuit has approved the disclosure of presentencing memoranda in post-conviction civil litigation, which is the situation here.  *See U.S. Indus., Inc. v. U.S. Dist. Ct. for S. Dist. of Cal.*, Cent. Div., 345 F.2d 18, 23 (9th Cir. 1965) (district court did not abuse its discretion in ordering a sentencing memoranda from a previous criminal proceeding in subsequent civil litigation, noting that it is "highly inequitable and averse to the principles of federal discovery to allow one party access to a government document and not the other.") Two decades later, the Ninth Circuit affirmed this principle in a FOIA case, stating that Federal Rule 32 of Criminal Procedure does "not create a civil discovery privilege" and that the "government has failed to identify an existing statutory or common law privilege that exempts presentence reports from discovery."  The Ninth Circuit recognized that "[p]resentence reports exhibit none of the traditional indicia of privileged documents" as "[t]hey are not prepared with an expectation of secrecy."  *Julian*, 806 F.2d at 1418, 1420.  The United States relies on *Hancock Brothers, Inc. v. Lyle L. Jones et al.*, 293 F. Supp. 1229 (N.D. Cal. 1968), which does not, however, support a privilege claim over the PSIRs.  The holding in *Hancock* does not rely on privilege. Thus, Rule of Criminal Procedure 32 does not create any privilege over PSIRs or otherwise restrict them from production in this case.  Notably, the United States failed to address the rule's applicability to our cases at all.  Nor has it identified any prejudice whatsoever to any party in this litigation from producing the PSIRs.

It would be manifestly unfair to prohibit Side One from using Rolfe's PSIR to refute his dubious about face and new assertion that he was never pressured by his bosses, which he declared only after meeting with Tetra Tech's counsel.  Whether Tetra Tech's managers were involved in the fraud is a central issue in our case, not just collateral, and Rolfe's statements in his PSIR speak directly to this issue.  The parties should be given the opportunity to examine Rolfe about his statements in his PSIR as it is not privileged, Side One respectfully requests that the Court review the PSIRs *in camera*, in particular paragraphs 11-13 and 16 of Rolfe's PSIR, noting the relevance of these documents as the Court decides whether to overrule the United States' clawback request.

Respectfully Submitted,

**O'MELVENY & MYERS LLP**

*/s/ David Marroso*
David Marroso
Attorney for CPHP DEVELOPMENT, LLC; HPS
DEVELOPMENT CO., LP; HPS1 BLOCK 50, LLC;
HPS1 BLOCK 51, LLC; HPS1 BLOCK 53, LLC;
HPS1 BLOCK 54, LLC; HPS1 BLOCK 55, LLC;

HPS1 BLOCK 56/57, LLC, AND LENNAR CORPORATION

**ALSTON & BIRD LLP**

*/s/ Jeffrey D. Dintzer*
Jeffrey D. Dintzer
Attorney for FIVE POINT HOLDINGS, et al

**COTCHETT, PITRE & McCARTHY, LLP**

/s/ *Anne Marie Murphy*
Anne Marie Murphy
Attorney for PENNINGTON, et al